UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KIMBERLY STINES,

                                    Plaintiff,

                    v.

ALVARO SANCHEZ, et al.,

                                    Defendants.

---

21 Civ. 7884 (DEH)

**<u>OPINION
AND ORDER</u>**

DALE E. HO, United States District Judge:

Currently before the Court is Plaintiff Kimberly Stines's Motion for Summary Judgment as to several Defendants: Alvaro Sanchez, as Personal Representative of the Estate of Joseph Bernal, and the so-called "Swim Club Defendants"—Bernal's Gator Swim Club, Inc.; Bernal's Gator Swim Club of New England, Inc.; and Baystate Gator Swim Club, LLC. Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 145. Ms. Stines's Motion is unopposed.[1] For the reasons stated below, Ms. Stines's Motion is **GRANTED IN PART** with respect to her claims against Defendant Alvaro Sanchez, and the Court **RERSERVES JUDGMENT** on her claims against the Swim Club Defendants.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this case and recites the facts herein only to the extent necessary to adjudicate Ms. Stines's Motion for Summary Judgment. The

---

[1] After the Court set a deadline for Ms. Stines to file either a motion for summary judgment or a motion for default judgment, but before Ms. Stines filed this Motion, the Swim Club Defendants indicated their intent to file a responsive pleading—apparently, a cross motion for summary judgment. *See* Dec. 9, 2024 Letter Mot., ECF No. 143. The Court informed the Swim Club Defendants that "[i]f Plaintiff file[d] a motion on December 13, 2024, the Swim Club Defendants [would] have until February 21, 2025, to respond." Mem. Endorsement, ECF No. 144. The Court cautioned the Swim Club Defendants that "any response on [their] behalf . . . must be submitted by a licensed attorney." *Id.* The Court has received no filing from the Swim Club Defendants since they submitted their letter on December 9, 2024.

following facts are drawn from Ms. Stines's motion papers—including the Motion, ECF No. 145; Memorandum of Law in Support of her Motion for Summary Judgment ("Pl.'s Mem.") and its concomitant exhibits, ECF No. 146; and the Rule 56.1 Statement of Undisputed Facts ("Pl.'s R. 56.1 Statement"), ECF No. 147. Having reviewed the aforementioned papers, the Court finds the contentions therein undisputed and supported by admissible evidence, unless otherwise noted.

After New York passed the Child Victims Act,[2] on August 10, 2021, Ms. Stines filed suit against her childhood swim coach, Joseph Bernal, who "continuously emotionally and sexually groomed and abused" her "from the time she was twelve until after she turned eighteen." Am. Compl. at 1, ECF No. 46; *see* Summons and Complaint, ECF 1-1. Ms. Stines initially filed in New York State court, and she included as Defendants several institutions with which Bernal was allegedly affiliated—namely, the Amateur Athletic Union of the United States ("AAU"); Fordham University; Bernal's Gator Swim Club of New England, Inc.; Baystate Gator Swim Club, LLC; Bernal's Gator Swim Club, Inc.; and Gator Swim Club, Inc. *See* Notice of Removal ¶ 1, ECF No. 1. In her pleadings, Ms. Stines describes several instances of Bernal abusing her, starting with an incident where he "sat in front of her with his legs around her and kissed her on the mouth." Pl.'s R. 56.1 Statement ¶ 5. Thereafter, "on many occasions, Bernal confined Ms. Stines in his office at Fordham [University] to abuse her." *Id.* ¶ 6. At least on one occasion, when Ms. Stines was eighteen, Bernal allegedly sexually assaulted her.[3] *Id.* ¶ 8. Ms. Stines's claims against Bernal

---

[2] "The New York Child Victims Act (CVA), which became effective on February 14, 2019, extended the statute of limitations for certain state law claims of sexual abuse." *Caldwell v. City of New York*, No. 21 Civ. 6560, 2021 WL 3887678, at *2 (S.D.N.Y. Aug. 27, 2021) (referencing New York Civil Practice Law and Rules § 214-g).

[3] This particular event occurred after Ms. Stines turned eighteen years old, meaning that it is not cognizable under the CVA, which only applies to "cases involving sexual abuse of *minors*," *Holloway v. Holy See*, 537 F. Supp. 3d 502, 504 (S.D.N.Y. 2021) (emphasis added). This incident may have been cognizable had Ms. Stines brought claims pursuant to both the CVA and the Adult Survivors Act (ASA), New York Civil Practice Law and Rules § 214-j.

sound in assault, battery, false imprisonment, and intentional infliction of emotional distress.  Pl.'s Mem. at 1.  She accuses the remaining Defendants of negligence.  *Id.*; Am. Compl. ¶¶ 131-57.

On September 21, 2021, Defendant Fordham University removed the case to federal court. *See* Notice of Removal at 1.  On August 2, 2022, Ms. Stines filed an Amended Complaint.  ECF No. 46.  On September 9, 2022, Defendants AAU and Fordham University answered the Amended Complaint.  *See* ECF Nos. 56 & 57.  That same month, Defendants Bernal's Gator Swim Club of New England, Inc. and Baystate Gator Swim Club, LLC moved to dismiss the Amended Complaint.  *See* Mot. to Dismiss, ECF No. 58.  On May 16, 2023, the Court denied that request, *see* Mem. Op. & Order, ECF No. 87, and on July 6, 2023, Defendants Bernal's Gator Swim Club of New England, Inc. and Baystate Gator Swim Club, LLC answered the Amended Complaint, ECF No. 89.  While the aforementioned motion to dismiss was pending, Defendant Joseph Bernal died, and Defendant Alvaro Sanchez was substituted for him as "curator/attorney ad litem" of Bernal's estate.  Order (the "Substitution Order"), ECF No. 82.  On October 12, 2023, this case was reassigned to the undersigned.  *See* Notice of Reassignment, ECF No. 102.

After the parties engaged in discovery, this case was referred to Magistrate Judge Gorenstein for a settlement conference, during which Plaintiff's claims against Defendants AAU and Fordham University were successfully resolved.  *See* Order of Dismissal, ECF No. 138. Plaintiff thereafter filed this Motion for Summary Judgment against the remaining Defendants— Alvaro Sanchez and the Swim Club Defendants.[4]  Pl.'s Mot.

---

[4] Plaintiff's Amended Complaint names one Defendant as "Gator Swim Club, Inc."  That Defendant was subsequently dismissed at Plaintiff's request for being "not a properly named entity pursuant to [Federal Rule of Civil Procedure] 41(a)(2)."  *See* Mem. Endorsement, ECF No. 137.

## LEGAL STANDARDS

Summary judgment is appropriate when a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[5]  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).  A party opposing summary judgment must establish a genuine issue of fact by citing to specific parts of materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).  In determining whether summary judgment is appropriate, the district court resolves all ambiguities and draws all reasonable inferences in favor of the nonmoving party.  *See, e.g.*, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

When a summary judgment motion is unopposed, the district court is not relieved of its duty to ensure that the movant is entitled to judgment as a matter of law.  *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).  "Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *see also Vt. Teddy Bear Co.*, 373 F.3d at 244 ("[W]here the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.").  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*."  *Vt. Teddy*

---

[5] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

*Bear Co.*, 373 F.3d at 244. "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Id.*

## DISCUSSION

The Court considers the claims against the Defendants separately, starting with Ms. Stines's claims against Defendant Alvaro Sanchez, and then moving to the claims against the Swim Club Defendants. Because this case has been removed from state court to federal court based on diversity of citizenship, *see* Notice of Removal ¶ 6, the Court analyzes the substantive elements of each of Ms. Stines's claims under New York law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Sarkees v. E.I. Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021) ("In a diversity of citizenship case, state law, here New York's, applies to substantive issues, and federal law applies to procedural issues.").

### I.    Claims Against Defendant Alvaro Sanchez as Curator/Attorney Ad Litem of the Estate of Joseph W. Bernal

#### A.  The Substitution of Alvaro Sanchez for Joseph Bernal

This Court has already approved Ms. Stines's substituting Alvaro Sanchez, in his capacity as personal representative of the estate of Joseph Bernal, for Bernal himself, who died during the pendency of this suit. *See* Substitution Order. For the avoidance of doubt, the Court reiterates that Sanchez is a proper party to be substituted for Bernal as the "person lawfully designated by state authority to represent the deceased's estate." *Id.* The Court also notes that, under New York State law, Ms. Stines's claims survive Bernal's death, and her case "may be . . . continued against the personal representative of the decedent"—that is, Defendant Sanchez. N.Y. Est. Powers & Trusts Law § 11-3.2(a)(1) (McKinney 2025).

**B.  Ms. Stines's Tort Claims Against Defendant Sanchez**

Ms. Stines brings assault, battery, false imprisonment, and intentional infliction of emotional distress claims against Sanchez.  Pl.'s Mot. ¶ 1.  The Court considers each in turn.

1.  Assault

"Under New York law, civil assault is an intentional placing of another person in fear of imminent harmful or offensive contact."  *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021).  "To establish a *prima facie* claim of assault under New York law, a plaintiff must prove physical conduct placing the plaintiff in imminent apprehension of harmful contact."  *Doe v. Alsaud*, 224 F. Supp. 3d 286, 294 (S.D.N.Y. 2016).  Here, the undisputed facts, supported by citations to Ms. Stines's deposition testimony, show that Bernal assaulted her.  When she was thirteen, Bernal took Ms. Stines to his office, "sat in front of her with his legs around her[,] and kissed her on the mouth."  Pl.'s R. 56.1 Statement ¶ 5.  She then recalled being in "shock" because she "didn't expect" the kiss—her first kiss.  Dep. of Kimberly Stines 58:14-16, 62:18-24.  This event is sufficient to substantiate Ms. Stines's assault claim.  *See, e.g.*, *Styka v. My Merch. Servs. LLC*, No. 14 Civ. 6198, 2016 WL 3866550, at *3 n.3 (E.D.N.Y. July 13, 2016) (describing plaintiff's claims "of unwanted kissing and groping" as "sufficient to establish assault and battery"); *Rosa v. Levinson*, No. 16441/06, 2009 WL 3152798, at *3 (N.Y. Sup. Ct. Sept. 30, 2009) ("The plaintiff[,] in alleging that defendant forced an unwanted kiss upon the plaintiff, satisfied the elements of 'Assault and Battery.'").  Because there is no genuine dispute of material fact as to whether Bernal assaulted Ms. Stines, Ms. Stines's Motion for Summary Judgment is GRANTED with respect to her assault claim.

2.  Battery

Under New York law, "[c]ivil battery is an intentional wrongful physical contact with another person without consent."  *Tardif*, 991 F.3d at 410.  "[T]o establish a prima facie claim of

battery, a plaintiff must prove that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent." *Doe*, 224 F. Supp. 3d at 294. The incident described above suffices to prove Ms. Stines's battery claim. *See Styka*, 2016 WL 3866550, at *3; *Rosa*, 2009 WL 3152798, at *3. Because there is no genuine dispute of material fact as to whether Bernal kissed and touched Ms. Stines without her consent, Ms. Stines's Motion for Summary Judgment is GRANTED with respect to her civil battery claim.

### 3. False Imprisonment

"To establish a cause of action for false imprisonment pursuant to New York law, a plaintiff must show that: (1) the defendant intended to confine her, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Doe*, 224 F. Supp. 3d at 295. Ms. Stines points to the incident described above—her being molested by Bernal in his office when she was thirteen years old—to substantiate her false imprisonment claim. Based on the undisputed facts before the Court, it is clear that Bernal intended to confine Ms. Stines, that Ms. Stines was aware of her confinement, and that Bernal's confinement of Ms. Stines was not privileged—that is, it was not "reasonable under the circumstances and in time and manner," *Sindle v. N.Y.C. Transit Auth.*, 307 N.E.2d 245, 248 (1973), because it was for the purpose of committing an assault and battery.[6]

Therefore, the only question is whether Ms. Stines has demonstrated that there is no issue of material fact that she did not consent to her confinement in Bernal's office at Fordham University. Ms. Stines's counsel states that she "did not have the capacity to consent due to her

---

[6] Ms. Stines's counsel's argument on this point—that Bernal "did not have probable cause to detain her"—is inapposite. Pl.'s Mem. This argument would be relevant had Bernal been, say, a state actor facing civil liability for falsely arresting Ms. Stines. *See, e.g.*, *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (describing the "finding of probable cause" as "a complete defense to an action for false arrest"). Obviously, this is not the case here. The Court therefore evaluates Ms. Stines's false imprisonment claim based on governing law as articulated above.

age." Pl.'s Mem. at 4. This is unsupported. Counsel cites the New York Penal Code to support this contention, but this case is brought as a civil, not criminal, action. Counsel cites no case standing for the proposition that the consent element for the civil cause of action Ms. Stines alleges here is inherently satisfied when the plaintiff is a minor because minors are categorically unable or incompetent to consent to a tort. *Cf. Romero v. City of New York*, 839 F. Supp. 2d 588, 632-33 (E.D.N.Y. 2012) (describing "a line of cases decided by the New York Appellate Division, Second Judicial Department, suggest[ing] that a minor plaintiff who is the victim of statutory rape may not succeed . . . on a civil claim for battery without showing a lack of consent to the wrongful physical contact, even though the minor plaintiff could not legally consent to sexual intercourse under the criminal code").

The issue, then, is whether the record before the Court would permit it to conclude that there is no genuine dispute of fact that Ms. Stines did not consent to being alone with Bernal in his office when he kissed her. Based on the facts Ms. Stines has presented, "it is reasonable to infer [Bernal's] intent [to confine Ms. Stines] as well as [Ms. Stines's] consciousness and lack of consent." *Moore v. Sam's Club, a Div. of Wal-Mart Stores, Inc.*, 55 F. Supp. 2d 177, 187 (S.D.N.Y. 1999). This is not a "close case[] where the facts are on the bubble" with respect to whether the plaintiff's "consent continued after [the d]efendant began to assault her." *Dixon v. Reid*, 744 F. Supp. 3d 323, 328-29 (S.D.N.Y. 2024). Instead, the Court cannot "reasonabl[y] infer," based on the facts and circumstances, that Ms. Stines consented to remaining confined in Bernal's office after he assaulted and battered her. Because there is no genuine dispute of material fact as to whether Bernal falsely imprisoned Ms. Stines, Ms. Stines's Motion for Summary Judgment is **GRANTED** with respect to her false imprisonment claim.

4.   Intentional Infliction of Emotional Distress (IIED)

"In New York, a cause of action for intentional infliction of emotional distress has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Doe*, 224 F. Supp. 3d at 295.  "Plaintiffs must allege conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Poppel v. Est. of Archibald*, No. 19 Civ. 1403, 2020 WL 2749719, at *7 (S.D.N.Y. May 27, 2020) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993))).  "This standard is 'rigorous, and difficult to satisfy.'" *Id.* (quoting *Howell*, 81 N.Y.2d at 122).  Moreover, "the New York Court of Appeals . . . has cautioned that a claim for IIED may not be sustainable 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir. 2014) (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (1978)).  "IIED claims serve as gap fillers intended 'to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied.'" *Dixon*, 744 F. Supp. 3d at 329 (quoting *Turley*, 774 F.3d at 159 n.18).

Here, Ms. Stines's argument is that she "was sexually abused as a 13-year-old by a much older man," that "sexual abuse of a minor is in fact extreme and outrageous," and that her abuse led to "severe emotional distress" for which she "received therapy."  Pl.'s Mem. at 4.  Her IIED claim, however, overlaps with her sexual assault and battery claims such that it is subsumed within those claims.  Ms. Stines cites no facts serving to distinguish her IIED claim from her other tort claims—her IIED claim is completely coextensive with her assault and battery claims. *Cf. Dixon*, 744 F. Supp. 3d at 329 ("Because the IIED claim includes a course of conduct broader than just

the sexual assaults, it is not duplicative of her sexual assault/battery claim.").  Therefore, this claim

fails.  Ms. Stines's Motion for Summary Judgment is **DENIED** with respect to her intentional

infliction of emotional distress claim.  Moreover, because this claim fails as a matter of law, the

Court exercises its inherent authority to dismiss it *sua sponte*.  *See, e.g.*, *Antidote Int'l Films, Inc.*

*v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006) ("[A] district court may

dismiss claims *sua sponte* for failure to state a claim, at least so long as the plaintiff had notice and

an opportunity to be heard on the issue.").

## II.    Claims Against the Swim Club Defendants

The Swim Club Defendants initially appeared and participated in motions practice with

respect to their liability.  However, the Court granted their counsel's request to withdraw in

December, *see* ECF No. 141, and new counsel has not appeared on the Swim Club Defendants'

behalf.  The Swim Club Defendants also failed to respond to Ms. Stines's Motion for Summary

Judgment despite indicating their intent to do so.  It therefore appears that the Swim Club

Defendants are in default.  *See* Fed. R. Civ. P. 55(a) (describing "a party against whom a judgment

for affirmative relief is sought" as being in default when that party "has failed to plead or otherwise

defend").  Ms. Stines shall file any motion for default judgment against the Swim Club Defendants

in accordance with Rule 55, Local Civil Rule 55.2, and this Court's Individual Rule 4(h).

**CONCLUSION**

For the reasons explained above, Ms. Stines's Motion for Summary Judgment is **GRANTED IN PART** with respect to Defendant Alvaro Sanchez. A referral order to the assigned Magistrate Judge for an inquest to determine damages will issue separately after the resolution of any motion for default judgment against the Swim Club Defendants.

The Court **RESERVES JUDGMENT** on Ms. Stines's Motion with respect to the Swim Club Defendants. Because the Swim Club Defendants appear to be in default, Ms. Stines may file any motion for default judgment against them **by June 3, 2025**.

Ms. Stines is directed to serve this Order on Defendant Alvaro Sanchez and on the Swim Club Defendants by mail and provide proof of service on the docket within one (1) week of this Order being published.

The Clerk of Court is respectfully directed to terminate ECF No. 145.

SO ORDERED.

Dated: May 19, 2025

New York, New York

_____

DALE E. HO
United States District Judge

11